Skip Navigation
Go to iConnect
Home Contact Us Locate People
Search Claims       Go!

The Hartford logo

# GBD *Claims*

Employees Applications and Tools Forms Policies and Procedures Reference Reports Training Projects
GBD Intranet Sites and Tools
Home > Policies & Procedures > Product Manuals > LTD > Claim Submissions and Investigation

# Claim Submissions and Investigation

- Introduction
- Annual Review
    - Delays/Follow Ups
- BMS Field Office Referrals to the Home Office
- Claim Submission (LTD Claim only)
    - Authorization to Release and Obtain Information
    - HIPAA Additional Authorization
- Claim Submission (LTD with an STD Claim)
- First Notice of an Application for Benefits
- Fraud Awareness
- Integrated Benefits
- Initial Claim Investigation
    - Attending Physician(s)
    - Establishing the Initial Claim Management Plan
    - Standard Processing of an LTD Claim
    - Claimant Telephonic Interview
    - Delays/Follow Ups
    - Age Verification
    - ERISA Requirements - Delays/Follow Ups
    - ISO ClaimSearch
    - Missing Policies and Booklet Re-creation
    - Other Insurance Carriers
    - Other Considerations - Delays/Follow Ups
    - Hospital Records
    - Use of Insurance Certificate Booklet or Contract
    - When to Initiate an Investigation
- Ongoing Claim Management
    - Delays/Follow Ups
    - Establishing the Ongoing Claim Management Plan
    - Milestones
- Proof of Loss
    - Late Submission of Claim

- Role of the Medical Staff
- Self-Employed Claimants
- Special Investigative Tools
    - Forensic Certified Public Accountant (CPA)
    - Functional Capacity Evaluation (FCE)
    - Independent Medical Examinations (IME)
        - Contacting the Primary Care Physician for Comment
        - Reason for Examination
        - Examination Procedures Not Permitted
    - Independent Records Review
    - Surveillance
    - Transferable Skills Analysis (TSA)
- Special Services Team (SST)
- Stable and Mature Unit
- Test Change Investigation
    - Claim Process
    - Communicating The Test Change Decision
    - Evaluating the Claimant's Functional Limitations
    - Employability Analysis
    - Making the Test Change Determination
- The Initial Decision
    - Approval Authority
    - Approval Milestones
- Timing of Claim Submission - Notice of Claim
-

# Introduction

## Overview

It is the policy of The Hartford to process each claim fairly, accurately, promptly, and courteously in accordance with the terms of the insurance contract, ERISA, and other statutory requirements.

Generally, claims are submitted to us from the Policyholder. When the Policyholder only has our LTD coverage, they submit the "Application For Long Term Disability Income Benefits", Form LC-4571-10 (Fully-insured) or "Application For Long Term Disability Income Benefits LC-6104-4 (ASO)" to the appropriate BMS Claim office. If a Policyholder also has our STD coverage, then the LTD claim submission is coordinated with our STD claim unit.

 Warning!  The contents of this chapter do not describe claim procedures as they apply to any statutory disability plans such as in California, New Jersey, or New York (When using the NY link, scroll down to the Workers' Comp link and then access Article 9 for NYDBL laws.) or provide an interpretation of any statutory disability plan provisions since these types of benefits are governed by each state's applicable law. Examiners who administer any statutory benefit plans need to do so in accordance with the applicable state law.

calendar See Prior to 10/31/2005

# Functional Capacity Evaluation (FCE) - Special Investigative Tools

## Overview

Since our ability to make a determination as to whether or not a claimant satisfies a specific definition of Disability is based on our understanding of their limitations, we may find it preferable in some circumstances to arrange for a Functional Capacity Evaluation rather than an IME. These circumstances are:

- the claimant's disability is musculoskeletal or subjective in nature;
- the claimant's attending physician has indicated that an FCE was necessary in order for him to address the claimant's functional abilities

A Functional Capacity Evaluation is done by a vendor specializing in assessing an individual's limitations using a variety of objective measurements that apply to the specific nature of the individual's disability. Requesting an FCE should be treated in the same manner as arranging for an IME.

The Medical Case Manager (MCM) or Rehabilitation Case Manager (RCM) in each BMS office can assist the Examiner in evaluating the necessity of an FCE, selecting a vendor to use, and obtaining the prescription for the FCE from the attending physician. Once a vendor has been selected, the MCM or RCM will provide the vendor with a cover letter stating the reasons for the FCE (identification or confirmation of the claimant's limitations), enclose copies of the medical information in the file, and provide the claimant's name, address and phone number so the vendor can contact the claimant with details of the appointment. The Examiner should advise the claimant that an FCE is being requested and that they will hear from the vendor regarding the time and place of the FCE.

Once the FCE report is received it should be reviewed and handled in the same manner as an IME report.

Also see the "Preferred Vendor" site in the Center For Abilities home web page for details regarding the requirements for the use of preferred vendors for conducting FCEs.

A copy of our FCE request to the FCE vendor must be kept in the claim file.

See Prior to 4/28/00

Please refer to the Vendor site for information on these vendors.

If an Ability Analyst feels that they need to utilze these vendors a Forensic CPA Referral form must be completed and sent to the CPA with attached copies of any applicable documents for their review.

See Prior to 7/31/2008

Return to Top

### Transferable Skills Analysis (TSA) - Special Investigative Tools

**Overview**

The Transferable Skills Analysis (TSA) is an employability analysis tool to help the Ability Analyst determine if a claimant is employable based on his/her demonstrated skills and current limitations. In most cases, a TSA should be used when determining whether or not a claimant satisfies a plan's "Any Occupation" definition of Total Disability (either initially or at the Test Change. See also California Any Occupation definition of Total Disability). It may also be used to assist with a vocational rehabilitation assessment. The Social Security Assistance program may use a TSA to support an individual's Social Security Disability insurance pursuit.

However, if the existing medical information in the file confirms that the claimant has very limited functional capabilities that in conjunction with his/her education, training and work history clearly show that he/she is totally disabled for any occupation, then a TSA would not be necessary.

⚠ We must have an Authorization to Obtain and Disclose Information form in file in order to release information from our file.

See Prior to 9/29/00

Return to Top

### Independent Medical Examinations (IME) - Special Investigative Tools

**Overview**

One of the most effective tools to determine if a claimant qualifies for disability benefits is the Independent Medical Examination (IME).

(Also see, "Clinical Best Practices - Procedures for IME Referral".)

**Policy Language - Independent Medical Examinations**

The policy language states . . .

"The Hartford may have you examined to determine if you are disabled. Any such examination will

be:

(1) at The Hartford's expense; and

(2) as reasonably required by The Hartford"

(See Refusal to Be Examined - Termination of Benefits)

Special clinical tools may be used when conducting a review of a disability claim including, but not limited to, an IME or a records review by an Independent Medical Consultant.

Standard contract language gives The Hartford the right to have a claimant examined at our expense at any point during the claim. The IME provider conducts an in-person examination of a claimant and reviews the claimant's medical records to assess functionality, while an Independent Medical Consultant assesses functionality based on a medical records review and conversations with a claimant's treating physicians.

While there are situations when an IME may not be the preferred resource (e.g., when only past functionality is under review), an IME is the preferred resource when a claim investigation requires an independent medical opinion.

See Prior to 3/31/2010

▲ Return to Top

**Reason for Examination - Independent Medical Examinations**

There are various situations an Ability Analyst may find it necessary to request an IME. Listed below are examples of those situations:

- limitations noted by the attending physician are inconsistent with diagnostic study results or medical records;
- to resolve conflicting opinions of the claimant's limitations between the claimant's examining or treating physicians;
- to resolve conflicting opinions of the claimant's limitations as provide to us by the claimant's treating/ examining physicians and our own medical staff;
- when insufficient medical information is received from the attending physician;
- to evaluate medical stability for rehabilitation potential;
- to confirm the claimant's limitations in conjunction with a Test Change investigation and/or to assist with a vocational evaluation or TSA (or other method of employability analysis);
- when the treating physician is not the appropriate specialist for treating the claimant's disabling condition;
- to identify and/or confirm the primary basis of disability when the claimant has both physical and psychiatric conditions;
- as part of an ERISA or non-ERISA appeal review.

(Also see, "Selection of Independent Vendor Type job aid")

See Prior to 3/31/2010

▲ Return to Top

**Information Needed Prior to Scheduling an Examination - Independent Medical**

Prior to referringing the file for an IME, we should:

- Obtain or attempt to obtain updated medical records?
- have a job description
- have an educational/work history
- Obtain or attempt to obtain current functionality and reasonable restrictions and limitations from the Attending Physician(s)?
- Document rationale supporting the necessity of an IME compared to other options considered (i.e. medical consultant review)?
- Discuss IME with Analyst or Claims referrer?
- Prepare appropriate IME questions?
- Document all correspondence with vendor, claimant, and others in DCS?

⚠ We must have an Authorization to Obtain and Disclose Information form in file in order to release information from our file.

(Also see, "Release of Psychiatric and Substance Abuse Records - California".)

See Prior to 8/31/2009

▲ Return to Top

**Medical Records - Independent Medical Examinations**

The claimant's medical records should already be in the file. The Ability Analyst will need to bring the documentation up-to-date when an IME is scheduled. The medical records would include the current diagnostic study results, progress notes, and if applicable, the hospital records.

The examining physician will require copies of the claimant's medical records to evaluate the claimant's past medical history. By doing so, the physician will be able to structure the exam more efficiently and render a more accurate opinion of the individual's limitation. (Also see "Surveillance")

Medical records can be released only if our file contains a current Authorization to Obtain and Disclose Information (LC-7411) which has language allowing such a release.

(Also see, "Release of Psychiatric and Substance Abuse Records - California".)

**Medical Staff Review - Independent Medical Examinations**

Ability Analyst should have the DCO's Medical Case Management (MCM) staff or Behavioral Health Case Manager (BHCM) staff review a file before the IME is scheduled.

(Also see, "Clinical Best Practices - Procedures for IME Referral".)

▲ Return to Top

**Choosing the Appropriate Examining Physician - Independent Medical Examinations**

When selecting an examining physician, the MCM/BHCM should determine which medical specialty can best evaluate the insured's disabling condition. The physician chosen to perform the evaluation should be board certified and have the same or better qualifications as the claimant's primary care physician.

Selecting A Specialist

🔺 Return to Top

**The Role of the Examining Physician - Independent Medical Examinations**

The examining physician's role is to evaluate the previous medical evidence and conduct the physical exam to determine the claimant's limitations or any other items included in the IME referral form. (Also see Examination Procedures Not Permitted.) The examining physician is not to provide therapy or treatment of any kind to the claimant as part of the IME including not providing or being requested to provide a prescription for an FCE

**Scheduling the Appointment - Independent Medical Examinations**

Some services involved in managing LTD claims are outsourced to preferred vendors. This includes Independent Medical Exams (IMEs). Please refer to the "Vendors" site for more details regarding the preferred vendors. These contracted and preferred vendors must be used. If there is a desire to go outside the network of contracted and preferred vendors for any reason, you must contact the Vendor Manager via the Vendor Mailbox @ :gbdvendorcontracts@hartfordlife.com. Urgent issues should be escalated via telephone contact to the appropriate resource in the Vendor Management Office (VMO).

The MCM/BHCM should review the file and determine if an IME is approrpiate. The MCM/BHCM staff will complete a "IME Request" form and provide the IME Vendor with the following information:

- copy of medical records
- name, address, phone number of claimant
- date of disability
- nature of disabling condition
- names of other treating or examining physicians

When the MCM/BHCM staff decides to arrange for an IME, the Ability Analyst should:

1. advise the claimant via phone that a representative (vendor) of the Harford will be contacting them regarding the IME. This should include an explanation of any applicable policy language, reason for the IME and what to expect; and

2. when the Hartford is notified of the date, location, provider and time of the IME, the Ability Analyst should send the claimant a letter advising him or her that an IME appointment is being scheduled and that a representative (vendor) of The Hartford's will be contacting them regarding the IME. The letter should also advise the claimant of:

- the reason for the IME;
- applicable Policy Language;
- the status of the claimant's claim pending receipt and review of the IME report; and
- the date, time and place of appointment and name of the IME physician.

claimant's continued disability, the claimant should be advised of this.

📅 See Prior to 6/30/2004

▲ Return to Top

### Our Medical Staff's Role - Independent Medical Examinations

When the IME findings differ from that of the attending or treating physician, and a reply has been received from the attending physician with comments and /or additional information, the file should be referred to an MCM/BHCM. They will evaluate the exam results and subsequent opinion from the attending physician. The MCM/BHCM can analyze the file and provide guidance for further action.

▲ Return to Top

### What To Do When The Conflict Can Not Be Resolved? - Independent Medical Examinations

If the differences between the two physicians can not be resolved, the Ability Analyst must review the medical evidence in the file. This will include previously submitted information, the examination results, the primary care physician's opinion and the MCM/BHCM staff's opinion.

▲ Return to Top

### Comment - Independent Medical Examinations

In most cases, benefits should be continued during the period the claimant is undergoing this examination and review process.

▲ Return to Top

### Independent Records Review

**Overview**

There may be circumstances for which an IME is not practical. However, an independent review of the medical records by the appropriate board-certified specialist may be useful in order to resolve the issues. The Hartford utilizes the services of a number of Medical Consultant vendors who coordinate a review of medical records by an independent physician. (See, "Medical Consultant Referrals ")

Although an independent records review can be used for the <u>same purposes</u> as an IME, but it is particularly useful in situations in which a claimant is in a remote location and/or an IME can not be arranged. Other situations for which an independent records review may be better suited are;

- Co-morbid files
- Pain and/or chronic pain claims
- Evaluation of pre-existing issues
- Assess a claimant's functional capabilities and limitations at a point in time well in the past (i.e. in a late claim filing review, etc.) versus his/her current functionality.
- Review medical data as part of an appeal of a denial or termination

⚠ We must have an Authorization to Obtain and Disclose Information form in file in order to release information from our file.

(Also see, "Release of Psychiatric and Substance Abuse Records - California".)

See Prior to 3/31/2010

Return to Top

**Claim Procedures - Independent Medical Review**

When an independent records review is used in lieu of an IME, it should be treated and processed in the similar manner as an IME except the independent medical reviewer is not being asked to examine the claimant. Before referring a file to a consulting physician for an independent medical review, the Ability Analyst or MCM/BHCM should:

- Obtain updated medical information if necessary;
- Review most recent office visit notes, test results, therapy notes, prescription records.
- Attempt to resolve any issues/questions on your own – Call the AP or other treatment provider.
- Determine what issues remain outstanding. (If these issues are resolved, how will this help the management of the claim?)
- Identify whether a file review (Medical Consultant referral) or physical evaluation (IME/FCE) will best resolve the outstanding issue.

If the Ability Analyst and/or MCM/BHCM then determines that an independent medical review of the file with one of our Medical Consultants is necessary, he/she should then:

- Determine whether a specialty evaluator is needed for Medical Consultant referral;
- Develop specific questions for consulting physician;
- Prepare a medical consultant referral form. The narrative summary section of that form should be brief and only contain information relevant to any questions posed. We should ask the medical consultant reviewer to review all of the enclosed records and pose only _appropriate_ medical questions for their response.

A copy of _all_ of the medical records from our file, including a printed copy of the portion of any "phone call" detail screen summaries from DCS in which we discussed treatment, limitations, etc. with a claimant's medical provider. However, we should not enclose copies of any prior medical consultant reviews whether or not they support the claimant's disability since we do not want these prior opinions to bias the current medical reviewer's opinion.

We must also include copies of the portion of all documentation in which a claimant provides us with his or her own self-report of their limitations and/or abilities. This includes but is not limited to items such as:

- a copy of only that portion of an ADL checklist found in the Employee section of the application for income benefits form or ADL Questionnaire);
- a copy of only that portion of the "Personal Profile Evaluation" section of a Claimant Questionnaire form.
- a copy of only that portion of any "phone call" detail screen summary from DCS such as a Claimant Telephonic Interview, Milestones telephone call, or any phone call with a claimant in which he or she provides a self-report of his or her limitations or abilities.

Prior to sending the copied medical records and request to the Medical Reviewer, the Ability Analyst or MCM/BHCM should:

- Review documents to ensure that no duplicate medical records are sent, and that no papers pertaining to the financial component of the claim are included.
- Provide additional referral packages for each specialty requested for Co-morbid claims.

(Also see, "Case Manager Processes" and "Clinical Best Practices".)

### Rehabilitation Case Managers (RCM) – Role of the Clinical Case Management Staff

The RCM staff assists the Ability Analysts by performing Employability Analysis or Labor Market Surveys (see "CA Any Occupation Definition of Disability") for potential vocational rehabilitation, any occupation definition or test change determinations.

(Also see, "RCM Processes" and "Rehabilitation", "Employability Analysis Referral form".)

### Medical Consultants and FCE Vendors

The Hartford utilizes the services of a number of Medical Consultant vendors who coordinate a review of medical records by an independent physician. The utilization of a Medical Consultant may be useful when:

- an IME is not practical;
- a physician to physician discuss may be useful in clarifying or confirming limitations as part of a denial/termination and/or appeal review

A Functional Capacity Evaluation is done by a vendor specializing in assessing an individual's limitations using a variety of objective measurements that apply to the specific nature of the individual's disability.

Also see:

- "Independent Medical Reviews",
- "Functional Capacity Evaluation",
- "Resolving the Medical Documentation",
- "No Longer Disabled – Reasons for Termination"
- "Not Disabled – Reasons for Denial",
- "Medical Review of the Claim File – Appeals",
- "Clinical Best Practices",
- "Case Manager Processes",
- "FCE Referral form",
- "Vendor Services".

See Prior to 7/31/2008

▲ Return to Top

### Fraud Awareness

### Overview

One of the Ability Analyst's responsibilities when reviewing a claim file is to be alert to and aware of signals that

claim submission process and while a claim determination can be made based on this APS (see "Initial Claim Investigation"), we may need to gather all relevant medical information both objective and subjective in order to fully and fairly make a determination and establish appropriate ongoing claim management strategies. Subjective complaints frequently contribute to an individual's functional status and we must also take these complaints into consideration when evaluating a claim for disability benefits.

As part of our claim adjudication process, we gather medical information from the claimant's attending or treating physicians or other medical providers (such as pertinent hospital records) including those who may not necessarily be involved with the condition that caused a claimant to file a claim.

Our focus is not necessarily on a diagnosis but is on the claimant's abilities or limitations that are supported by the totality of the relevant medical information that we receive. Verifying the diagnosis is important to our understanding the appropriateness of the treatment being provided and/or for determining a primary basis for any disability should the contract limit or exclude benefits for certain disabling conditions. Understanding the nature of the disabling condition is also important when selecting the appropriate medical specialty should an IME, FCE or independent medical review be necessary. Otherwise our emphasis is on establishing the claimant's abilities and limitations as supported by the medical documentation.

Each claim is unique and therefore based on the nature and scope of the medical data required, the Ability Analyst must decide which physicians or sources need to be contacted and what documentation need be requested, as well as for what period of time. The information requested can consist of any one or more of the following:

- a request to the claimant to have his or her physician provide us with an updated APS,
- narrative reports from the attending or treating physician describing examination results, physical limitations, prognosis, etc.,
- a copy of the physician's office records including progress notes, consultation notes, and results of tests any testing performed,
- pharmacy records,
- therapy notes and records,
- hospital records,
- other medical records and/or any IME reports from the Workers' Comp (WC) carrier if the claimant also has a WC claim.

The Ability Analyst should carefully review all of the information to identify or confirm any limitations placed on the claimant. If the claimant has a chronic condition, the Ability Analyst should see if the records or notes explain what changes have occurred in the claimant's condition and why and what limitations would now be placed on his or her activities because of these changes.

⚠ The Ability Analyst should reference the appropriate Clinical Protocol or Guideline for that diagnosis to assist with this review. These are available in the Medical Reference folder in eCoach.

If the claimant had surgery to correct or repair a particular condition, the records and any subsequent progress notes, physical therapy notes, etc. should indicate the outcome of that surgery and whether or not it improved the claimant's ability to function and if so, to what extent.

Diagnostic study results (such as MRI's, blood tests, pulmonary function studies, etc.) are an important source of information about the claimant's condition and ability to function. The Clinical Case Management staff can assist the Ability Analyst in interpreting and understanding what these findings tell us about the extent of a claimant's condition and any limitations and prognosis.

In addition, the records we receive from the various medical providers may also contain comments on the claimant's activities, referrals to specialists, other life factors that may impact their disability such as family responsibilities or work issues related to the claimant's medical condition (such as an impending layoff or conflicts between the claimant and an immediate supervisor), etc.

If a pre-existing investigation is being conducted, the Ability Analyst must review the records to determine whether or not the records document that the policy's Pre-existing Conditions Limitation/Exclusion might apply.

If the records do not provide the type of information needed to understand the claimant's functionality, the Ability Analyst should call or write to the physician for an explanation and/or ask the DCO Clinical Case Management or Behavioral Health staff to review the records and provide an assessment.

Following our contact with the physician to clarify functionality, an independent medical review of the records, independent medical examination (IME), or functional capacity evaluation (FCE), or independent medical review of the records must be done in order to make a claim determination under the following circumstances:

1. When, the limitations noted by the attending physician remain inconsistent with diagnostic study results or medical records, and/or
2. to resolve legitimate conflicting opinions of the claimant's limitations between the claimant's examining or treating physicians; or
3. to resolve legitimate conflicting opinions between the claimant's treating/examining physicians and our own MCM staff.

The DCO office's Clinical Case Management and Behavioral Health staff are available to assist an Ability Analyst at any point with the review of the medical documentation.

Also see:

- "Attending Physician – Initial Claim Investigation"

However, the reality is that there are instances when the medical information we receive:

- Is <u>incomplete or unclear</u> as to the claimant's limitations and/or supporting documentation;
- Results in <u>inconsistent or conflicting</u> opinions among the claimant's attending or examining physicians as to any limitations;
- Is at <u>odds with our understanding</u> of the claimant's medical condition and resulting documented limitations; or
- Is <u>unresponsive</u> to our requests to the AP for additional medical information or clarification.

Over time Courts through the litigation process as well as State Insurance Departments through their oversight of insurer practices, have emphasized the weight of the claimant's own attending physician opinion in assessing a claimant's disability. Courts and State Insurance Departments have reinforced the need for claim adjudication practices to resolve discrepancies that might exist in the assessment of the medical documentation. This is done through the use of independent medical examinations, functional capacity evaluations, and to a lesser extent independent medical reviews of the medical records. Our own best practices have always endorsed the necessity to make reasonable attempts to resolve any differences.

Our best practices guidelines identify the following general steps to clarify any ambiguities, inconsistencies or differences of opinion as it applies to documenting the medical information in our claim files. These include:

- Direct contact with Attending or treating physicians to clarify any issues;
- Use of our Medical Clinical Management (MCM) staff to assist in the assessment of the medical information when needed; and
- Utilization of independent medical consultant reviews; independent medical examinations (IME), or functional capacity evaluations (FCE)

⚠ These best practices represent guidelines or parameters to consider which may not necessarily be applicable to all claims in the same manner. The actual facts and uniqueness of each claim should dictate how broadly or narrowly to apply the procedures.

In addition, in the initial pending claim scenario Ability Analyst's must be cognizant of ERISA, other statutory or our own time-frames for <u>making a prompt initial determination</u> when we consider what additional steps, if any, are needed to verify the claimant's limitations. .

⚠ In the on-going claim management process the ERISA time-frames do not apply and therefore there may be less of a time constraint when attempting to resolve any ambiguities, inconsistencies or differences of opinion.

Ultimately it is the Ability Analyst's responsibility to determine what limitations would be placed on the claimant's activities and how those limitations impact the claimant's ability to perform the essential duties of his/her occupation or any occupation.

▲ Return to Top

### Incomplete or Unclear Medical Documentation – Resolving the Medical Documentation

Occasionally, whether on receipt of the initial APS or resulting follow-up requests to an Attending Physician (AP), the medical documentation received is incomplete. That is we have not been provided with all the medical information that the AP may have and therefore the limitations and restrictions placed on the claimant may not be clearly evident.

The Ability Analyst then should consider the following actions keeping in mind that the facts and circumstances of the actual claim may determine if some or all the steps are necessary:

1. The Ability Analyst should write or call the AP to try and obtain the missing medical records and to clarify the claimant's limitations. If the additional information is received and is sufficient to make a decision, the Examiner then makes that determination as required.
2. If the additional information is received, but it still is not clear what the limitations are, the Ability Analyst can refer the file to the Medical Case manager (MCM) detailing why the referral is being made and requesting the MCM to provide clarification as to any restrictions.
3. If the MCM can provide that clarification, and it supports the AP's opinion then he/she can respond to the referral accordingly. The Ability Analyst will then make the required decision.
4. If the MCM can not provide clarification or concludes that the medical does not support the limitations provided by the AP (and the time frames for making an initial determination allow for it), the MCM can arrange for:

    1. An <u>IME</u>;
    2. <u>FCE</u>; or
    3. An <u>independent medical consultant review</u>.

Once the IME, FCE or medical records review report is received, the MCM will provide the report and summarize the results (i.e. note the limitations identified in the report) to the Ability Analyst.

⚠ When the IME or FCE report conclusions differ from that of the AP, the report must be provided to the AP along with a request to the AP to respond to the conclusions stated in the report. The Ability Analyst will then make the necessary decision upon receipt of the